UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:17-cr-54-RJC-DSC-1
3:18-cr-82-RJC-SCR-1

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | **ORDER** |
| ANGELO MEJIA, ) | |
| ) | |
| Defendant. ) | |
| ) | |

**THIS MATTER** is before the Court on Defendant's pro se Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody [Doc. 53].

## I. BACKGROUND

Defendant was charged in Case No. 3:17-cr-00054-RJC with: possession with intent to distribute cocaine in violation of 21 U.S.C. 841(a)(1) and (b)(1)(C) (Count One); possession of firearm in furtherance of a drug trafficking crime, i.e., Count One, in violation of 18 U.S.C. § 924(c) (Count Two); possession of a firearm by a felon in violation of 18 U.S.C. § 922(g)(1)[1] (Count Three); and possession of ammunition by a felon in violation of 18 U.S.C. § 922(g)(1) (Count Four). [Doc. 7].

In Case No. 3:18-cr-00082-RJC-SCR, the Defendant was charged with conspiracy to distribute and possess with intent to distribute 50 grams or more of methamphetamine actual in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A), and 846 (Count One); conspiracy to possess with

---

[1] Specifically, Count Three charges that the Defendant, "having been previously convicted of one or more crimes punishable by imprisonment for a term exceeding one year, did knowingly and unlawfully possess a firearm in and affecting interstate commerce." [Doc. 7].

1

intent to distribute 100 grams or more of heroin in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(B) and 846 (Count Two); and possession with intent to distribute 100 grams or more of heroin in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(B) and 18 U.S.C. § 2 (Count Fourteen). [3:18-cr-82, Doc. 22]. The Government filed an Information pursuant to 21 U.S.C. § 851 charging that the Defendant was previously convicted of a felony drug offense, i.e., North Carolina felony possession of cocaine in violation of N.C. Gen. Stat. § 90-95 in Case No. 14CRS209299, which was punishable by up to 24 months' imprisonment. [3:18-cr-82, Doc. 32; see Doc. 53-2 at 8].

The Defendant entered into Plea Agreements in both cases. In Case No. -54, the Defendant pleaded guilty to Counts One and Three and in Case No. -82 he pleaded guilty to Counts One and Fourteen. [Doc. 22 at ¶¶ 1-2 (Plea Agreement); see Doc. 3:18-cr-82 Doc. 147]. The Government agreed to dismiss the remaining counts, and to dismiss the § 851 Information in Case No. -82 in exchange for the Defendant's pleas. [Id.]. The Plea Agreement in Case No. -54 states that the offenses are punishable as follows:

> Count One (1): a violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C); a maximum term of twenty (20) years imprisonment, $1,000,000 fine, or both, and a term of supervised release of at least three (3) years; and
>
> Count Three (3): a violation 18 U.S.C. §§ 922(g)(1) and 924; a maximum term of ten (10) years imprisonment, $250,000 fine, or both, and term of supervised release of not more than three (3) years.

[Id. at ¶ 5].

The parties further agreed to jointly recommend that: the Defendant's plea is timely for purposes of U.S.S.G. § 3E1.1(b); the amount of mixture and substance containing a detectable amount cocaine that was known to or reasonably foreseeable by the Defendant (including relevant conduct) was approximately 110.2 grams of cocaine; enhancements pursuant to U.S.S.G. §§ 2D1.1.(b)(1), 2K2.1(b)(4), and 2K2.1(b)(6) are applicable; the parties will not seek any other

2

enhancements or reductions to the offense level; the appropriate sentence is within the applicable guideline range and neither party will seek a departure or variance; the sentence imposed in Case No. 3:17-cr-54 should run concurrent to the sentence in Case No. 3:18-cr-82; the career offender or armed career criminal enhancement will apply if the Court determines it applies; and the United States will inform the Court and the probation office of all facts pertinent to the sentencing process. [Id. at ¶ 8].

The Plea Agreement further provides that: the Court would consider the advisory U.S. Sentencing Guidelines; the Court had not yet determined the sentence; any estimate of the likely sentence is a prediction rather than a promise; the Court would have the final discretion to impose any sentence up to the statutory maximum for each count; the Court would not be bound by the parties' recommendations or agreements; and Defendant would not be permitted to withdraw his plea as a result of the sentence imposed. [Id. at ¶ 7].

The Plea Agreement provides that there is a factual basis for the guilty plea, and that Defendant read and understood the written Factual Basis that was filed with the Plea Agreement, which may be used by the Court, U.S. Probation Office, and United States without objection for any purpose, including to determine the applicable advisory guideline range or the appropriate sentence. [Id. at ¶ 11]. The Plea Agreement further provides that the Factual Basis does not necessarily represent all of the conduct relevant to sentencing, and that the Government may submit a Statement of Relevant Conduct to the Probation Office and present the Court with additional relevant facts prior to or at sentencing. [Id. at ¶ 12].

The Plea Agreement sets forth the rights Defendant was waiving by pleading guilty, including the right: to withdraw the guilty plea once the Magistrate Judge has accepted it; to be tried by a jury; to be assisted by an attorney at trial; to confront and cross-examine witnesses; and

3

not be compelled to incriminate himself. [Id. at ¶¶ 13-15]. The Plea Agreement acknowledges that Defendant had discussed with defense counsel his post-conviction and appellate rights, and he expressly waived those rights except for claims of ineffective assistance of counsel or prosecutorial misconduct. [Id. at ¶¶ 16-17]. The Plea Agreement provides that "[t]here are no agreements, representations, or understandings between the parties in this case, other than those explicitly set forth in this Plea Agreement, or as noticed to the Court during the plea colloquy and contained in writing in a separate document signed by all parties." [Id. at ¶ 28].

The Factual Basis that was filed along with the Plea Agreement provides in relevant part:

> The defendant, Angelo Mejia, on or about February 4, 2016, in Mecklenburg County … and elsewhere, did knowingly and intentionally possess with intent to distribute controlled substances, that is a mixture and substance containing a detectable amount of cocaine ("powder cocaine"), a Schedule II controlled substance, specifically one-hundred-ten-point-two (110.2) grams of cocaine;
>
> The defendant, Angelo Mejia, on or about February 4, 2016, in Mecklenburg County … and elsewhere, did knowingly and unlawfully possess a firearm and ammunition, in and affecting interstate commerce, that is an FN USA 45 caliber semi-automatic firearm, and Freedom Munition 45 caliber ammunition.
>
> The aforementioned narcotics, firearm and ammunition, were discovered by law enforcement in Angelo Mejia's Charlotte, NC residence on February 4, 2016. These items were in close proximity to each other.
>
> At the time of the incident, the defendant, Angelo Mejia was previously convicted of one or more crimes punishable by imprisonment for a term exceeding one year.

[Doc. 23 at 1-2] (paragraph numbers omitted).

A Rule 11 hearing came before a magistrate judge on November 8, 2018.[2] [Doc. 48]. The Defendant stated under oath that he received a copy of the Indictment, discussed it with counsel,

---

[2] The Rule 11 hearing addressed the Defendant's guilty pleas in 3:17-cr-54 as well as 3:18-cr-82.

and understood the charge to which he was pleading guilty and his sentencing exposure. [Id. at 4-5]. The Defendant agreed that: he understood that pleading guilty may cause him to be deprived of certain civil rights; he discussed with counsel how the sentencing guidelines may apply to his case; the Court would not be able to determine the sentence until a PSR has been prepared and Defendant has had an opportunity to comment on it; he may receive a sentence that is different from that called for by the guidelines; and he would have no right to withdraw the plea even if he receives a sentence more severe than he expects. [Id. at 11-12]. Defendant acknowledged the rights he was waiving by pleading guilty. [Id. at 12-13].

The Plea Agreement was summarized in open court. [Id. at 22-23]. Defendant confirmed that he understood and agreed with the terms of the Plea Agreement, including the waiver of his appellate and post-conviction rights. [Id. at 21]. Defendant stated that he read the Factual Basis, discussed it with counsel, understood it, and agreed with it. [Id. at 22-23]. He admitted that he is guilty as charged in Counts One and Three. [Id. at 14]. Defendant stated that nobody threatened, intimidated, or forced him to plead guilty, and that nobody made any promises of leniency or a light sentence to induce him to plead guilty. [Id. at 23]. Defendant agreed that he had enough time to discuss any possible defenses with his lawyer and was satisfied with counsel's services. [Id.].

A single Presentence Investigation Report (PSR) was prepared that addressed Case Nos. -54 and -82. It noted that a § 851 Information had been filed in Case No. 82, but that the enhancement no longer applied to the Defendant as follows:

> Based on the First Step Act of 2018 (Section 401), it appears the conviction cited in the Notice of Intention to Seek Enhanced Penalties no longer qualifies as a prior offense that triggers enhanced penalties. Therefore, the statutory penalties presented in this report do not include an enhancement pursuant to 21 U.S.C. § 851….

[Doc. 34 at ¶ 3-4]. The PSR calculated the offense level based on Count One, which was grouped

with Counts One and Fourteen from Case No. -82. [Doc. 34 at ¶¶ 39-40, 56]. The base offense level for the group was calculated as 38 because the Defendant was responsible for a total drug amount equivalent to 90,022.04 kg of marijuana (4.5 kilograms of methamphetamine (actual) in Case No. 3:18-cr-82, which is equivalent to 90,000 kg of marijuana, and 110.2 grams of cocaine in the instant case, which is equivalent to 20.04 kg of marijuana). [Id. at ¶ 40]. Two-level enhancements were added because a firearm was possessed pursuant to U.S.S.G. § 2D1.1(b)(1), and because the Defendant unlawfully participated in the importation of methamphetamine from Mexico pursuant to U.S.S.G. § 2D1.1(b)(5). [Id. at ¶¶ 41-42]. Four levels were added because the Defendant was a leader or organizer of a criminal activity that involved five or more participants or was otherwise extensive pursuant to U.S.S.G. § 3B1.1(a). [Id. at ¶ 44]. No Chapter Four enhancements were added. [Id. at ¶ 57]. This resulted in an adjusted offense subtotal of 46. [Id. at ¶¶ 46, 56]. Three levels were deducted for acceptance of responsibility, so the total offense level was 43. [Id. at ¶¶ 58-60]. The Defendant had four criminal history points, and two points were added because the Defendant committed the instant offense while he was under a criminal justice sentence. [Id. at ¶¶ 80-81]. This resulted in six criminal history points and a criminal history category of III. [Id. at ¶ 82]. The advisory guideline range was, therefore, life imprisonment. [Id. at ¶ 114]. The PSR notes as follows with regards to the impact of the Plea Agreement:

> Had the defendant pled to Count 2 in 3:17CR00054-001, he would have been subject to a term of imprisonment consecutive to the term of imprisonment imposed in the other counts. Otherwise, the remaining counts from both Indictments would have been grouped under USSG § 3D1.2(d) for guideline calculation purposes.

[Id. at ¶ 115].

A sentencing hearing came before the Court on December 10, 2019. [Doc. 49]. The Defendant agreed that he had a chance to read the PSR, understood it, and had enough time to

review it with counsel. [Id. at 3]. Counsel withdrew Defendant's objections to the firearm and role enhancements. [Id.]. The Government agreed that the importation enhancement should be removed. [Id. at 5]. This decreased the offense level from 43 to 41, and the advisory guideline range decreased from life imprisonment, to 360 months to life imprisonment. [Id. at 5, 8-9]. The Government moved for a downward departure to an offense level of 36 and a sentence of 235 months' imprisonment. [Id. at 5-6]. Defense counsel requested a reduction to an offense level of 31 and sentencing at a bottom of that range of 151 months' imprisonment. [Id. at 6-8]. The Defendant apologized for his actions and expressed remorse. [Id. at 8]. The Court sentenced the Defendant to 235 months' imprisonment for Count One, 120 months' imprisonment for Count Three, concurrent to each other and to the 235-month sentence that was imposed in Case No. -82. [Id. at 10-11; 3:18-cr-82 Doc. 264]. The Judgment was entered on December 30, 2019. [Doc. 38].

The Defendant appealed in both cases. He argued that: (1) counsel was ineffective for allowing him to enter contradictory plea agreements and by withdrawing two objections to two sentencing enhancements; (2) his plea was not knowing and voluntary due to contradictory terms in the plea agreements; and (3) the § 922(g) conviction is invalidated by Rehaif v. United States, 588 U.S. 225 (2019). The Fourth Circuit affirmed on March 24, 2023. United States v. Mejia, 2023 WL 2625609 (4th Cir. March 24, 2023). It found that the claim of ineffective assistance of counsel was not conclusively established by the record so it should be raised, if at all, in a § 2255 petition. Id. at *1. As to the claim that the plea was not knowing and voluntary, the Fourth Circuit found:

> Based on our review of the Rule 11 hearing, we conclude that Mejia's plea was knowing, voluntary, and supported by an independent factual basis. The magistrate judge reviewed the terms of Mejia's plea agreements, including the stipulations made by the parties regarding the Sentencing Guidelines, and ensured that Mejia had read, understood, and agreed to those terms. We conclude that the terms of Mejia's plea agreements were not contradictory and do not render Mejia's otherwise valid guilty plea unknowing and involuntary. Therefore, the magistrate

judge and the district court committed no error in accepting Mejia's guilty plea.

Id. at *2. The Fourth Circuit found that the guilty plea remains valid after Rehaif as follows:

> Mejia does not argue that he did not know he was a felon, and we conclude that any attempt to do so would be unconvincing in light of his criminal history, which includes a felony possession of cocaine conviction for which Mejia was still on probation when he committed the instant offenses. Therefore, Mejia has not demonstrated a reasonable probability that the outcome of these proceedings would have been different had the district court been aware of, and advised Mejia regarding, the knowledge-of-status element under Rehaif….

Id. The Defendant did not seek certiorari review.

The Defendant filed the instant § 2255 Motion to Vacate on January 29, 2024.[3] [Doc. 53]. He argues that counsel was ineffective for failing to: (1) determine that his prior North Carolina convictions do not qualify as predicate offenses for purposes of § 851 or U.S.S.G. § 4B1.2; and (2) adequately research § 922(g) defenses pursuant to Rehaif and New York State Rifle & Pistol Ass'n, Inc. v. Bruen, 597 U.S. 1 (2022), and he would have insisted on a jury trial had counsel performed effectively. [Doc. 53-1 at 4-13]. He asks the Court to: sentence him to 120 months for the drug conviction; vacate his § 922(g) sentence and resentence him; allow him to withdraw the guilty plea; order a new trial; and/or order an evidentiary hearing. [Id. at 1, 6; Doc. 53 at 12]. The Court ordered the Government to respond. [Doc. 54]. It argues that counsel did not perform ineffectively and, to the extent that the Defendant raises a substantive Bruen claim, it is waived, procedurally defaulted, and meritless. [Doc. 59]. The Defendant has not replied and the time to do so has expired. Accordingly, the matter is ripe for disposition.

## II.    SECTION 2255 STANDARD OF REVIEW

A federal prisoner claiming that his "sentence was imposed in violation of the Constitution

---

[3] Houston v. Lack, 487 U.S. 266, 276 (1988) (establishing the prisoner mailbox rule); Rule 3(d), 28 U.S.C. foll. § 2255 (addressing inmate filings).

or the laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a).

Rule 4(b) of the Rules Governing Section 2255 Proceedings provides that courts are to promptly examine motions to vacate, along with "any attached exhibits and the record of prior proceedings . . ." in order to determine whether the Defendant is entitled to any relief on the claims set forth therein. After examining the record in this matter, the Court finds that the arguments presented by Defendant can be resolved without an evidentiary hearing based on the record and governing case law. See Raines v. United States, 423 F.2d 526, 529 (4th Cir. 1970).

### III. DISCUSSION[4]

The Sixth Amendment to the U.S. Constitution guarantees that in all criminal prosecutions, the accused has the right to the assistance of counsel for his defense. See U.S. Const. Amend. VI. To show ineffective assistance of counsel, a defendant must first establish deficient performance by counsel and, second, that the deficient performance prejudiced him. See Strickland v. Washington, 466 U.S. 668, 687-88 (1984). The deficiency prong turns on whether "counsel's representation fell below an objective standard of reasonableness ... under prevailing professional norms." Id. at 688. A reviewing court "must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." Harrington v. Richter, 562 U.S. 86, 104 (2011) (quoting Strickland, 466 U.S. at 689). The Strickland standard is difficult to satisfy in that the "Sixth Amendment guarantees reasonable competence, not perfect

---

[4] The Defendant's claims have been reorganized and restated. Any argument or subclaim that is not specifically addressed in this section has been considered and rejected.

9

advocacy judged with the benefit of hindsight." See Yarborough v. Gentry, 540 U.S. 1, 8 (2003). The prejudice prong inquires into whether counsel's deficiency affected the judgment. See Strickland, 466 U.S. at 691. A defendant must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. In considering the prejudice prong of the analysis, a court cannot grant relief solely because the outcome would have been different absent counsel's deficient performance, but rather, it "can only grant relief under . . . Strickland if the 'result of the proceeding was fundamentally unfair or unreliable.'" Sexton v. French, 163 F.3d 874, 882 (4th Cir. 1998) (quoting Lockhart v. Fretwell, 506 U.S. 364, 369 (1993)). Under these circumstances, a defendant "bears the burden of affirmatively proving prejudice." Bowie v. Branker, 512 F.3d 112, 120 (4th Cir. 2008). If the defendant fails to meet this burden, a "reviewing court need not even consider the performance prong." United States v. Rhynes, 196 F.3d 207, 232 (4th Cir. 1999), *vacated on other grounds*, 218 F.3d 310 (4th Cir. 2000).

"[A] guilty plea constitutes a waiver of all nonjurisdictional defects, including the right to contest the factual merits of the charges." United States v. Willis, 992 F.2d 489, 490 (4th Cir. 1993). Thus, after a guilty plea, a defendant may not "raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." Blackledge v. Perry, 417 U.S. 21, 29-30 (1974). He is limited "to attacks on the voluntary and intelligent nature of the guilty plea, through proof that the advice received from counsel was not within the range of competence demanded of attorneys in criminal cases." Id. Where a defendant enters his plea upon the advice of counsel, the voluntariness of the plea depends on whether counsel's advice was "within the range of competence demanded by attorneys in criminal cases." Hill v. Lockhart, 474

10

U.S. 52, 56 (1985) (quoting McMann v. Richardson, 397 U.S. 759, 771 (1970)). To satisfy Strickland's prejudice prong, the defendant must show "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill, 474 U.S. at 59. To meet this requirement, a defendant must establish "both subjectively that he would have gone to trial and that it would have been objectively reasonable to do so." United States v. Santiago, 632 F. App'x 769, 773 (4th Cir. 2015) (emphasis in original) (citing United States v. Fugit, 703 F.3d 248, 260 (4th Cir. 2012)).

When an ineffective assistance claim relates to a sentencing issue, a petitioner must demonstrate a "reasonable probability that his sentence would have been more lenient" but for counsel's error. Royal v. Taylor, 188 F.3d 239, 249 (4th Cir. 1999) (internal quotation omitted). When applying the Strickland prejudice test in the context of sentencing, "any amount of actual jail time has Sixth Amendment significance." Glover v. United States, 531 U.S. 198, 203 (4th Cir. 2001).

The Defendant's contention that counsel provided ineffective assistance by failing to argue that his prior convictions are not valid predicates under the § 851 and U.S.S.G. § 4B1.2 sentencing enhancements is conclusively refuted by the record. No Chapter Four or § 851 enhancement was included in the PSR or was applied to the Defendant's sentence. [See Doc. 34 at ¶¶ 3, 4, 57; Doc. 38]. Counsel was not deficient for failing to object to enhancements that were not included in the PSR applied at sentencing, and the Defendant cannot demonstrate prejudice because he did not receive an increased sentence due to either enhancement.

The Defendant does not appear to argue that counsel's allegedly ineffective assistance with regards to these enhancements rendered his plea involuntary. [See Doc. 53-1 at 3]. Had he raised such an argument, it would be rejected. Any suggestion that counsel was deficient for failing to

11

negotiate for misadvising the Defendant to plead guilty despite a Chapter Four enhancement fails because no such enhancement was applied as discussed *supra.* Any suggestion that counsel's failure to object to the § 851 enhancement in Case No. -82, or for negotiating for that enhancement's dismissal, is also rejected. When the Defendant pleaded guilty on November 8, 2018, his North Carolina felony conviction for possession of cocaine under N.C. Gen. Stat. § 90-95, for which he could have received a 24-month sentence, qualified as a "felony drug offense" under § 851. See 21 U.S.C. § 802(44) (2016) (defining a "felony drug offense" as "an offense that is punishable by imprisonment for more than one year…."). Based on the state of the law at the time, reasonable counsel would not have objected to the § 851 information in Case No. -82, and would have advised the Defendant to plead guilty after negotiating the enhancement's dismissal.

The Defendant has also failed to demonstrate prejudice because it would not have been objectively reasonable for him to proceed to trial notwithstanding counsel's handling of the Chapter Four and § 851 enhancements. The Plea Agreement resulted in the dismissal of multiple serious charges including a § 924(c) charge that would have carried a mandatory consecutive sentence. [See Doc. 23; see also 3:18-cr-82, Doc. 147]. The Defendant also received a three-level reduction in the offense level for acceptance of responsibility, and the plea a 10-year downward departure at the Government's request. Moreover, the Factual Basis and the information contained in the PSR demonstrate that there was strong proof of the Defendant's guilt. [See Doc. 23; Doc. 34 at ¶¶ 9-33]. It would not have been objectively reasonable for the Defendant to proceed to trial under these circumstances, even if he could demonstrate that counsel performed deficiently with regards to the Chapter Four and/or § 851 enhancements.

The Defendant's arguments that counsel was ineffective for failing to challenge the constitutionality of § 922(g)(1) based on Rehaif and Bruen, and that this rendered his plea

12

involuntary, also fail. In Rehaif, the Supreme Court held that "in a prosecution under 18 U.S.C. § 922(g) and § 924(a)(2), the government must prove both that the defendant knew he possessed a firearm and that he knew he belonged to the relevant category of persons barred from possessing a firearm." 588 U.S. 225, 237 (2019). Rehaif only requires knowledge of possession and of his prohibited status as a felon, and not knowledge that he was not allowed to possess a firearm. The Defendant's present argument that he lacked knowledge of possession is outside of Rehaif's holding, and counsel's failure to advise him of the same was not deficient. Moreover, the Defendant's Rehaif claim is barred because the Fourth Circuit found on direct appeal that any argument that Defendant did not know his status as a felon would be "unconvincing" in light of his criminal history, and that the Defendant was unable to demonstrate a reasonable probability that the outcome of the proceeding would have been different. Mejia, 2023 WL 2625609, at *1. The Defendant's present argument that he cannot read and write English are irrelevant to his understanding of his status as a felon, which he acknowledged verbally in state court. [See, e.g., Doc. 53-2 at 2, 7 (Case No. 12CRS229363/234098 Transcript of Plea, acknowledging that "upon conviction of a felony you may forfeit any State licensing privileges…."; Case No. 14CRS209299 Transcript of Plea (same))]. The Defendant may not now take a second bite at the apple by reiterating his Rehaif claim under the guise of ineffective assistance of counsel. See United States v. Dyess, 730 F.3d 354, 360 (4th Cir. 2013) (it is well settled that a criminal defendant cannot "circumvent a proper ruling ... on direct appeal by re-raising the same challenge in a § 2255 motion") (quoting United States v. Linder, 552 F.3d 391, 396 (4th Cir. 2009)); United States v. Roane, 378 F.3d 382, 396 n. 7 (4th Cir. 2004) (noting that, absent "any change in the law," defendants "cannot relitigate" previously decided issues in a § 2255 motion); Boeckenhaupt v. United States, 537 F.2d 1182, 1183 (4th Cir. 1976) (holding criminal defendant cannot "recast,

13

under the guise of collateral attack, questions fully considered by this court [on direct appeal]"). Accordingly, the Defendant's Rehaif claim is barred from § 2255 review.[5]

In Bruen, the Supreme Court held that the government must justify firearms prohibitions by showing that they are consistent with the nation's historical tradition of firearm regulation. 597 U.S. 1 (2022). Bruen was decided on June 23, 2022, more than two years after the Defendant was sentenced and, in any event, Bruen did not hold that § 922(g)(1) is unconstitutional. See United States v. Canada, 103 F.4th 257 (4th Cir. 2024) (noting that, after Bruen, "no federal appellate court has held that Section 922(g)(1) is facially unconstitutional, and [the Fourth Circuit] will not be the first"). Counsel cannot be deemed deficient for failing to predict this change of law, or for failing to raise an inapplicable challenge to § 922(g)(1).[6]

Nor can the Defendant demonstrate prejudice. Counsel's failure to challenge the constitutionality of § 922(g)(1) based on Bruen and Rehaif could not have affected the voluntariness of his plea because those decisions are inapplicable to his case, and because the Plea Agreement was highly beneficial to the Defendant as discussed *supra*. It would not have been objectively reasonable to reject the plea offer based on these inapplicable cases. Accordingly, the Defendant's claims that counsel provided ineffective assistance for failing to challenge § 922(g)(1), and that this rendered his guilty plea involuntary, are dismissed and denied.

**IV.    CONCLUSION**

For the foregoing reasons, the Motion to Vacate is dismissed and denied.

---

[5] Were the Defendant's claim of ineffective assistance of counsel regarding Rehaif not waived, it would be denied on the merits because he cannot demonstrate either deficient performance by counsel or prejudice for the same reasons that the Fourth Circuit denied his Rehaif claim on direct appeal.

[6] Any substantive Bruen claim is procedurally defaulted from § 2255 review, was waived by the Defendant's knowing and voluntary guilty plea, and lacks merit. [See Doc. 59 at 22-23].

14

**IT IS, THEREFORE, ORDERED** that:

1. The Motion to Vacate [Doc. 53] is **DISMISSED AND DENIED.**

2. **IT IS FURTHER ORDERED** that pursuant to Rule 11(a) of the Rules Governing Section 2254 and Section 2255 Cases, this Court declines to issue a certificate of appealability. See 28 U.S.C. § 2253(c)(2); Miller-El v. Cockrell, 537 U.S. 322, 338 (2003) (in order to satisfy § 2253(c), a Defendant must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong); Slack v. McDaniel, 529 U.S. 473, 484 (2000) (when relief is denied on procedural grounds, a Defendant must establish both that the dispositive procedural ruling is debatable and that the petition states a debatable claim of the denial of a constitutional right).

3. The Clerk is respectfully instructed to docket this Order in the instant case as well as in Case No. 3:18-cr-82-RJC-SCR-1.

**IT IS SO ORDERED**.

Signed: July 31, 2024

Robert J. Conrad, Jr.
United States District Judge